**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **ASHLEY JACKSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:24-cv-836** |
| | § | |
| **SHARKNINJA OPERATING, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Ashley Jackson ("Plaintiff ") files her Original Complaint against Defendant, SharkNinja Operating LLC ("SharkNinja"), and for her causes-of-action respectfully shows this Court as follows:

**I.**
**PARTIES**

1.01   Plaintiff, Ashley Jackson, is an individual residing in Princeton, Collin County, Texas.

1.02   Defendant, SharkNinja Operating LLC, is a non-resident Massachusetts corporation engaged in and doing business in the State of Texas.  Pursuant to Texas Civil Practice & Remedies Code § 17.044 and Texas Business Organizations Code § 5.251, SharkNinja may be served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as its agent for service of process because SharkNinja is engaged in and doing business in the State of Texas, it does not maintain a registered agent for service process in the State of Texas, and this lawsuit arises out of SharkNinja's business in the State of Texas.  The address for service is CT Corporation System, 155 Federal Street, Suite 700, Boston, MA  02110.

## II.
### VENUE AND JURISDICTION

2.01    Since complete diversity of citizenship exists between the parties, and the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs, this court has diversity jurisdiction under 28 U.S.C. 1332.

2.02    Venue is proper in the Eastern District of Texas—Sherman Division, pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omission giving rise to the claim occurred in Collin County, Texas, which is in the Eastern District—Sherman Division.  Plaintiff would show that the incident made basis of this suit occurred in Princeton, Collin County, Texas.

## III.
### FACTS

3.01    On or about January 16, 2023, Plaintiff Ashley Jackson was using her Ninja Foodi cooker, Model # OP300 I07, to prepare gumbo soup in Princeton, Texas. The unit has multiple settings. On this occasion Plaintiff used the sear function. As she often does when using the Ninja Foodi non-pressurized settings, she decided to open the unit and add additional ingredients during the cooking process. The unit was not releasing any pressure or steam and appeared to be in normal working condition.

3.02    As Plaintiff opened the lid, she did not encounter any unexpected resistance. However, as she removed the lid from the pot, she was immediately struck by boiling hot cooking liquid that spewed out from the pressurized Ninja Foodi. The liquid was at an extremely hot temperature and struck mostly on Ashley's torso and forearm. As a result of this incident, she went to the hospital for treatment of 2nd and 3rd degree burns to her torso and left forearm.

3.03    Prior to the incident, Plaintiff had used the SharkNinja Foodi pressure cooker multiple times without any problems. Plaintiff was gifted her Ninja Foodi pressure cooker, Model # OP300 I07, in approximately November or December of 2021.

**IV.**
**STRICT LIABILITY AND NEGLIGENCE CLAIMS AGAINST**
**DEFENDANT SHARKNINJA OPERATING LLC**

4.01    The Product at issue in this suit was designed, tested, manufactured, constructed, marketed, distributed, sold and/or placed into the stream of commerce by and through the agents and/or representatives of Defendant.

4.02    Defendant was regularly engaged in the business of supplying or placing products, like the Pressure Cooker in question, in the stream of commerce for use by the consuming public, including Plaintiff.  Further, such conduct was solely for commercial purposes.

4.03    The Pressure Cooker in question remained unchanged from the time it was originally manufactured, distributed and sold by Defendant until it reached Plaintiff and ultimately led to her injuries and damages.  Stated another way, the Pressure Cooker in question was defective and in an unreasonably dangerous condition at all times until it ultimately caused the injuries and damages asserted herein.

4.04    At the time the Pressure Cooker was placed into the stream of commerce, it was, or should have been, reasonably expected and foreseeable that the Pressure Cooker would be used by persons such as Plaintiff in the manner and application in which it was being used at the time she suffered her injuries.

4.05    There were no mandatory safety standards or regulations adopted and promulgated by the federal government or an agency of the federal government that were applicable to the Pressure Cooker at the time of manufacture and that governed the product risk that allegedly caused harm.  Alternatively, the design of the Pressure Cooker did not comply with mandatory safety standards or regulations adopted by the federal government that were applicable to the Pressure Cooker model at the time of the manufacture and governed the risks that caused Plaintiff's injuries.  Again, in the alternative, in the event that such standards were in effect, and they were complied with, they were nonetheless inadequate to protect the public from unreasonable risks of

injury or danger, or the manufacturer, before or after marketing the Pressure Cooker, withheld or misrepresented the information or material relevant to the federal governments or agencies' determination of adequacy of the safety standards or regulations at issue in the action.

4.06    With respect to the design of the Pressure Cooker, at the time it left the control of Defendant, there were safer alternative designs.  Specifically, there were alternative designs that, in reasonably probability, would have prevented or significantly reduced the risk of injury to Plaintiff. Furthermore, such safer alternative designs were economically and technologically feasible at the time the product left the control of Defendant by the application of existing or reasonably achievable scientific knowledge.

4.07    At the time the Pressure Cooker left the control of Defendant, it was defective and unreasonably dangerous in that it was not adequately designed, manufactured or marketed to minimize the risk of injury.  By way of example and without limitation, the product in question was unreasonably and dangerously defective in the following ways:

a.    The Pressure Cooker was defectively designed in that it was not reasonably fit for foreseeable circumstances and uses;

b.    Failing to design and manufacture the Pressure Cooker in a way to prevent the lid from opening while the contents of the pot were under pressure;

c.    Failing to design/manufacture the Pressure Cooker in a way that prevents the contents from pressurizing when the lid is not adequately secured;

d.    Marketing the Pressure Cooker as a product with safety designs intended to prevent the lid from opening while the contents of the pot were under pressure;

e.    Marketing the Pressure Cooker as a product with safety designed intended to prevent the contents of the pot from becoming pressurized in the event the lid is not adequately secured; and

f.    Failing to include adequate warnings and/or instructions to alert the user that it was unsafe to use in a foreseeable manner and had a propensity to fail.

4.08    The above unreasonably dangerous defects in the Pressure Cooker in question were the proximate and producing cause of Plaintiff's injuries and damages.

4.09    Defendant breached its duty of care and was thus negligent by:

a.      designing and/or distributing the model product at issue with a design standard that was intended to meet the minimum government regulations, instead of safely designing the Pressure Cooker to reasonably minimize injuries in foreseeable accidents;

b.      failing to adequately monitor the design and performance of the model product at issue in the field to ensure that they were reasonably minimizing injuries in the circumstances of the products' intended or reasonably foreseeable uses;

c.      failing to adequately test the model product at issue to ensure that it would be reasonably safe in the circumstances of the products' intended or reasonably foreseeable uses;

d.      failing to adequately test the model product at issue to ensure that it would withstand reasonable pressure in the course of ordinary and foreseeable use;

e.      failing to adequately test the model product at issue to ensure that it would not pressurize unless the lid was fully secured in the course of ordinary and foreseeable use; and

f.      failing to recall, retrofit, or issue post-sale warnings after Defendant knew, or should have known, that the was defective and unreasonably dangerous.

## V.
### GROSS NEGLIGENCE AND EXEMPLARY DAMAGES

5.01    Plaintiff alleges that each and every negligent act or omission of Defendant and its agents, as set forth above, when viewed objectively from the standpoint of policymakers, involved an extreme degree of risk, considering the probability and magnitude of the physical harm to others and that Defendant had actual subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of Plaintiff and others like her and as such, such conduct amounts to gross negligence or malice, as those terms are defined by law, so as to give rise to an award of exemplary or punitive damages, for which Plaintiff now pleads against Defendant. Additionally, by reason of such conduct, Plaintiff is entitled to and

therefore asserts a claim for punitive and exemplary damages in an amount sufficient to punish and deter Defendant, and other corporations like it, from such conduct in the future.

## VI.
### DAMAGES

6.01 As a proximate result of the acts and omissions of Defendant described above, Plaintiff has suffered damages which include, but are not limited to:

a. medical expenses in the past and those that in reasonable probability will occur in the future;

b. loss of earnings in the past and loss of earning capacity in the future;

c. physical impairment in the past and future;

d. disfigurement in the past and future;

e. mental anguish in the past and future; and

f. physical pain and suffering in the past and future.

## VII.
### PRE-JUDGMENT AND POST-JUDGMENT INTEREST

7.01 Plaintiff claims pre-judgment and post-judgment interest at the maximum rate allowed by law.

## VIII.
### JURY DEMAND

8.01 Plaintiff respectfully requests that the Court impanel a jury to decide all fact issues in this case.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer this Complaint and that upon final hearing, Plaintiff recover judgment against Defendant for her damages as they appear at trial hereof together with costs of court, pre-judgment and post-judgment interest, and for such general and equitable relief as Plaintiff may be entitled.

Respectfully submitted,


*/s/ Todd H. Ramsey*

**Todd H. Ramsey**
State Bar No. 00787283
**Mac Phelps**
State Bar No. 24098977
**PAYNE MITCHELL RAMSEY LAW GROUP**
3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
Tel:   214.252.1888
Fax:   214.252.1889
Email:  todd@paynemitchell.com
        mac@paynemitchell.com

*ATTORNEYS FOR PLAINTIFF*